**IN THE UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF INDIANA, SOUTH BEND DIVISION**

| | |
|---|---|
| MYSTI VALENCIA, as Personal Representative of the ESTATE OF MICHAEL SMITH, and on her own behalf, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| RON NEAL, JASON NOWATZKE, CHRISTOPHER BEAL, DANIELLE BROWN, DEBORAH TAYLOR, DOUGLAS WARDLOW, ART KAUFMAN, ANDREW KMITTA, JANILLE WHITAKER, LIEUTENANT NADINE SMITH, OFFICER KEVIN CROSS, DENNIS KOEN, VINCENT MCCORMICK, AMON LEE, JENIENE WALTON, DARNELL CROCKETT, STEVEN MCCANN, LATRICE JONES, ERNEST WILLIAMS, MICHAEL EVERETT, and JAYLON SINGLETON, | ) ) ) ) JURY TRIAL DEMANDED ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) ) |

**FIRST AMENDED COMPLAINT[1]**

Plaintiff Mysti Valencia, as Personal Representative of the Estate of Michael Smith, and on her own behalf, complains of Ron Neal, Jason Nowatzke, Christopher Beal, Danielle Brown, Deborah Taylor, Douglas Wardlow, Art Kaufman, Andrew Kmitta, Janille Whitaker, Kevin Cross, Nadine Smith, Dennis Koen, Vincent McCormick, Amon Lee, Jeniene Walton, Darnell Crockett, Steven McCann, Latrice Jones,  Ernest Williams, Michael Everett, and Jaylon Singleton (collectively, "Defendants"), and states as follows:

---

[1] Plaintiff files this Amended Complaint pursuant to the Court's July 11, 2024 Scheduling Order. *See* ECF No. 54 ("The last date to amend this pleadings without leave of the court as to plaintiff(s) is **October 3, 2024**").

**INTRODUCTION**

1.      On January 14, 2023, Michael Smith burned to death in his cell at Indiana State Prison (ISP).

2.      Michael Smith died because Defendants ignored the serious risk that Mr. Smith, and other incarcerated individuals like him, would be seriously injured or killed by fire at the prison.

3.      When a fire started in Mr. Smith's cell on January 14, 2023, Defendants ignored his increasingly desperate cries for help, the cries for help from numerous other prisoners in his housing unit, and the thick smoke billowing out of his cell and filling the entire cell house.

4.      Despite having both the opportunity and obligation to save Mr. Smith's life by opening his cell door and rescuing him from the fire, Defendants let Mr. Smith burn to death instead. They did not open his cell door until Mr. Smith had already died.

5.      Despite being aware of the risk posed by fires, Defendants knowingly allowed dangerous conditions to persist at ISP and in Mr. Smith's housing unit, and failed to take basic fire safety measures that would have prevented or mitigated the fire that killed Mr. Smith.

6.      Another prisoner, Joshua Devine, had previously been killed when ISP staff failed to rescue him from a fire that started in his cell on April 7, 2017, just as they later failed to rescue Mr. Smith. Following Mr. Devine's death, Defendants continued to fail to address the known risk that fires posed to prisoners at ISP. This failure led directly to Mr. Smith's death.

7.      Plaintiff brings this action pursuant to 42 U.S.C. § 1983 and Indiana law to hold Defendants accountable for their misconduct and for violating Mr. Smith's constitutional rights, and to redress the loss caused to Mr. Smith and his family, by Defendants' callous and inexcusable conduct.

**JURISDICTION AND VENUE**

8.      This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331, 1343 and 1367.

9.      Venue is proper under 28 U.S.C. § 1391(b). On information and belief, at least one Defendant resides in this judicial district and the events giving rise to the claims asserted here all occurred within this district.

**PARTIES**

10.     Plaintiff Mysti Valencia is the daughter of Michael Smith, who was a 48-year-old prisoner housed at ISP. On November 8, 2023, Plaintiff was appointed as Personal Representative of Mr. Smith's Estate by the LaPorte County Superior Court, case #46D02-2311-EU-000238.

11.     Defendant Ron Neal was, at all times relevant to his involvement in this case, including during the period leading up to and on the day of Mr. Smith's death, the Warden at ISP and an employee of the Indiana Department of Correction (IDOC). Defendant Neal was responsible for the implementation, oversight, and supervision of policies and practices at ISP, and the oversight and discipline of staff there. Defendant Neal is sued here in his individual capacity. At all times relevant to the events at issue in this case, Defendant Neal was acting under color of law and within the scope of his employment.

12.     Defendant Jason Nowatzke was, at all times relevant to his involvement in this case, including during the period leading up to and on the day of Mr. Smith's death, the Assistant Superintendent of the Operations Division at ISP and an employee of the IDOC. Defendant Nowatzke was responsible for the development, implementation, oversight, and supervision of policies and practices regarding security and operations at ISP, as well as the oversight and discipline of staff there. Defendant Nowatzke is sued here in his individual capacity. At all times

3

relevant to the events at issue in this case, Defendant Nowatzke was acting under color of law and within the scope of his employment.

13.     Defendant Christopher Beal was, at all times relevant to his involvement in this case, including during the period leading up to and on the day of Mr. Smith's death, the head of the Facility Training Department at ISP and an employee of the IDOC. Defendant Beal was responsible for developing training resources and ensuring that all staff at ISP were properly trained. Defendant Beal is sued here in his individual capacity. At all times relevant to the events at issue in this case, Defendant Beal was acting under color of law and within the scope of his employment.

14.     Defendants Danielle Brown and Deborah Taylor served as the Safety Hazard Managers at ISP at all times relevant to their involvement in this case, including during the period leading up to and/or on the day of Mr. Smith's death, and were employees of the IDOC. Defendants Brown and Taylor were responsible for establishing and monitoring a safety program at ISP; ensuring that the facility was in compliance with applicable fire, health, and safety rules and regulations; supervising the prisoner firefighter program; and ensuring that the facility was maintained and operated in a fashion that minimized fire, health, and safety risks. Defendants Brown and Taylor are sued here in their individual capacity. At all times relevant to the events at issue in this case, Defendants Brown and Taylor were acting under color of law and within the scope of their employment.

15.     Defendant Douglas Wardlow was, at all times relevant to his involvement in this case, including during the period leading up to and on the day of Mr. Smith's death, the Major and Custody Supervisor at ISP, and an employee of the IDOC. Defendant Wardlow was responsible for operations during emergencies at ISP and for developing procedures to implement IDOC

policies relating to emergencies. Defendant Wardlow is sued here in his individual capacity. At all times relevant to the events at issue in this case, Defendant Wardlow was acting under color of law and within the scope of his employment.

16.    Defendants Art Kaufman, Andrew Kmitta, and Janille Whitaker served as the Physical Plant Directors at ISP at all times relevant to their involvement in this case, including during the period leading up to and/or on the day of Mr. Smith's death, and were employees of the IDOC. Defendants Kaufman, Kmitta and Whitaker were responsible for coordinating and overseeing all preventative maintenance at the prison. Defendants Kaufman, Kmitta and Whitaker are sued here in their individual capacities. At all times relevant to the events at issue in this case, Defendants Kaufman, Kmitta and Whitaker were acting under color of law and within the scope of their employment.

17.    Defendants Nadine Smith, Kevin Cross, Dennis Koen, Vincent McCormick, Amon Lee, Jeniene Walton, Darnell Crockett, Steven McCann, Latrice Jones, Ernest Williams, Michael Everett, and Jaylon Singleton were the officers assigned to work in A Cell House and/or assigned duties relating to the safety and welfare of prisoners in  A Cell House at the time of the fire in Mr. Smith's cell on January 14, 2023.These Defendants (collectively, "Defendant Officers") were correctional officers, sergeants, lieutenants, or captains at ISP and employees of the IDOC.

18.    Defendant McCann was the Shift Supervisor at ISP and Defendant Jones was the Assistant Shift Supervisor on duty at the time of the fire. Both McCann and Jones were responsible for supervising staff on duty at ISP at the time of the fire, including ensuring that staff carried out their duties with regard to supervising prisoners at ISP and responding to emergencies at ISP.

19.    Defendant Officers were on duty at ISP at the time of the fire and were responsible for the safety and welfare of prisoners at ISP, including Michael Smith. They were also responsible

for responding to emergencies that occurred in A Cell House at the time of the fire. Defendant Officers are sued in their individual capacities. At all times relevant to the events at issue in this case, Defendant Officers were acting under color of law and within the scope of their employment.

**ALLEGATIONS OF FACT**

**Defendant Officers ignore Michael Smith and other prisoners'
cries for help while Mr. Smith burns to death in his locked cell**

20.    ISP is located in Michigan City, Indiana and was built in 1860. At the time, it was known as "Indiana State Prison North," to differentiate it from "Indiana State Prison South" located in Jefferson City, Indiana.

21.    In 1922, the Jefferson City location was destroyed by fire. The Michigan City facility then became known as "Indiana State Prison," and became the oldest correctional facility in operation for the Indiana Department of Correction.

22.    The ISP facility has not been properly modernized and presents known risks of death or serious injury from fire.

23.    ISP has a prisoner firefighter program, in which prisoners are highly trained and certified to respond to fires at ISP.

24.    The prisoner firefighters, if properly summoned and released by ISP staff in the event of smoke or fire, are capable of quickly responding to emergencies and extinguishing fires.

25.    On January 14, 2023, the prisoners housed in ISP's A Cell House were secured in their cells. Michael Smith was alone in his cell in A Cell House.

26.    At some point while Mr. Smith was locked in his cell, a fire broke out in his cell.

27.    Mr. Smith and other prisoners in A Cell House began to yell for help to alert Defendant Officers that he needed help.

6

28.    Locked alone in his cell, Mr. Smith was unable to put out the fire, and unable to escape from the fire, without the assistance of Defendant Officers.

29.    Defendants Smith, Cross, Crockett, Jones, Singleton, Walton and other Defendant Officers were present in A Cell House and heard prisoners yelling for help but did nothing to respond to this obvious emergency and did not take any steps at this time to either release Mr. Smith from his cell or to help put out the fire.

30.    As the fire in Mr. Smtih's cell grew in size and intensity, smoke began to billow out of his cell and to fill A Cell House. The cries for help were joined by more and more other prisoners in the Cell House, who yelled for help and to alert Defendant Officers that there was a fire in Mr. Smith's cell.

31.    Soon, Mr. Smith and almost all, if not all, the other prisoners who were in A Cell House were screaming for help and yelling that there was a fire in A Cell House. The prisoners also banged on their bars and banged other metal objects in their cells to get the attention of Defendant Officers and any other staff on duty.

32.    Defendants, Smith, Cross, Crockett, Jones, Singleton, Walton and other Defendant Officers heard these cries for help and banging noises made by the prisoners, but they continued to ignore this obvious emergency, taking no action to respond to the situation or to aid Mr. Smith.

33.    At this time, all Defendants Officers heard or were made aware of the cries for help and banging noises made by the prisoners, but they too ignored the obvious emergency and took no action to respond to the situation or to aid Mr. Smith.

34.    The smoke in the cell house became so thick that the prisoners living there could not see more than a few feet in front of them and struggled to breathe.

35.    Flames began to engulf Mr. Smith's whole cell with him in it, and his screams filled the Cell House.

36.    Eventually, some of the Defendant Officers, including Defendants Cross, Crockett, McCann, Koen, and McCormick finally came to Mr. Smith's cell, but even then, they did not open his cell door, put out the fire, or take other steps to protect Mr. Smith before his death.

37.    The Defendant Officers also failed to timely call for emergency help from the firefighters and prevented the firefighters from timely entering the Cell House to put out the fire and protect Mr. Smith.

38.    Defendant Officers took no action to unlock the door to Mr. Smith's cell or to extinguish the fire until Mr. Smith had already burned to death.

39.    Defendant Officers had multiple opportunities and avenues to assist Mr. Smith and ultimately to save his life.

40.    Defendant Officers could have released Mr. Smith from his cell and saved him from the fire, using a manual release system (keys) and/or an electronic release system to unlock his cell door.

41.    Defendant Officers could have used the available fire extinguishers in A Cell House to attempt to extinguish the fire in Mr. Smith's cell.

42.    Defendant Officers could have summoned assistance from the prisoner fire department to help extinguish the fire in Mr. Smith's cell.

43.    Defendant Officers could have summoned assistance from other correctional staff on duty at the prison for help dealing with the emergency.

44.    Instead, Defendant Officers did nothing to release Mr. Smith from his cell or otherwise protect him from the fire until it was too late, and the fire had already engulfed his cell.

**Defendants ignore longstanding dangerous conditions at ISP
that posed a serious risk to Michael Smith and other prisoners in the event of a fire**

45.     Mr. Smith's death was the tragically foreseeable result of Defendants' failures over many years to remedy known and obvious fire hazards and unsafe conditions at ISP, including but not limited to those listed below.

46.     There was no working sprinkler system in the A Cell House. Defendants were aware of this deficiency, and of the danger it posed to prisoners in the cell house, yet took no steps to correct this dangerous condition.

47.     Defendants were aware of, and yet took no steps to correct, numerous other dangerous conditions at ISP that increased the risk and decreased the survivability of fires, including persistent electrical defects (such as sparking outlets), and highly flammable materials in prisoner living areas, including Mr. Smith's cell.

48.     Defendants were aware of, and yet took no steps to correct, dangerously deficient policies, procedures, and training at ISP that increased the risk of fires and decreased the survivability of fires. For example, Defendants took no steps to correct woefully inadequate policies, procedures and training that failed to ensure that:

    a.  Fire risks, including electrical problems, were timely identified and repaired or remedied;

    b.  Necessary individuals, including emergency personnel and firefighters, were timely notified of fires at the prison;

    c.  Prisoners could be safely and quickly evacuated from their cells in the event of a fire or other emergency;

    d.  Staff were knowledgeable and prepared to respond to a fire emergency when one occurred;

e. Firefighters were able to timely arrive to the scene of a fire and respond to the fire; and

f. Fire safety equipment was quickly accessible and working properly in the event of a fire.

49. Defendants' failures to remedy these and other dangerous conditions at ISP is all the more egregious because they had previously been directly and explicitly put on notice of these serious conditions, and their potential for deadly consequences.

50. In April 2017, Joshua Devine died in a fire in his locked cell at ISP, in very similar circumstances to the death of Michael Smith: Mr. Devine was locked in his cell and unable to escape the fire; Mr. Devine and other prisoners yelled for assistance, but officers in the cellhouse ignored these cries while the fire grew and spread; officers failed to timely summon emergency assistance from more senior correctional staff or from the prisoner firefighters; when the prisoner firefighters were eventually activated, officers failed to promptly release them from their housing units to go to the scene of the fire; and the fire response was hampered by poorly trained staff and unclear and deficient policies.

51. Defendants took no meaningful action to improve fire safety at ISP in the nearly six years following Mr. Devine's death.

52. In February 2022, a federal judge issued a ruling in connection with a lawsuit brought by Mr. Devine's family relating to his death at ISP.

53. In that ruling, the judge made a number of findings about deficient fire safety and officer response at ISP that impacted Mr. Devine's death, including finding that there was evidence to support the conclusion that:

a. Officers in the cell house on the night of Mr. Devine's death knew there was a fire but ignored prisoners screaming for help for at least 15 minutes while doing nothing to respond to the fire;

b. Even once officers belatedly did respond to the fire in Mr. Devine's cell, they took no meaningful action to rescue Mr. Devine or put out the fire, and acted with deliberate indifference to the risk of harm that he faced;

c.  Senior supervisory staff on duty at ISP on the night of Mr. Devine's death failed to respond appropriately to the fire, including a lengthy delay in activating the prisoner firefighters and a delay in bringing fire extinguishers to Mr. Devine's cell;

d. There were frequent fires at ISP, some of which were caused by problems with the electrical system;

e. There were deficiencies in fire safety training at ISP;

f. There were deficiencies in the systems by which prisoner firefighters were activated, released, and employed in response to fire emergencies, including evidence that prisoner firefighters were "consistently delayed in their release" as a result of "poorly trained staff" at ISP;

g. "Training for new officers on responding to emergencies at ISP was deficient";

h. Officers at ISP received no training on "when it was appropriate to release a prisoner from his cell in the event of an emergency," "when to investigate unusual situations or disturbances," or "when to go and let prison firefighters out of their cells";

i. "[T]here were no written instructions advising staff on how and when to release prisoner firefighters";

11

j. "[F]ire drills at ISP were not being performed in compliance with the fire code or fire policy";

k. "[I]nspections of the facility, which involved inspecting fire safety equipment, were not being performed in any meaningful manner;"

l. "There was excessive property being stored in cells prior to Devine's death," which was known by Defendant Neal to be a "fire hazard;"

m. "Security checks on the prisoners were not being performed on time;" and

n. Senior supervisory officials at ISP "knew that the safety protocols were deficient and posed a substantial risk," yet "acted recklessly in the face of those risks."

54.     The federal court summarized its findings as follows: "There was evidence submitted indicating that there were common and widespread issues with safety and safety protocols at ISP, including: fires, electrical hazards, radio malfunctions, excessive property being kept in cells, security checks not being performed on time, perfunctory inspections, a complete absence of fire drills for the night shift, and delays in letting out prisoner firefighters. As explained previously, these common, dangerous conditions and policy lapses help demonstrate that each of the [senior supervisory officials] knew about the dangerous conditions."

55.     Despite these findings by a federal court, detailed over the course of a 50+ page ruling this significant evidence of severe deficiencies in fire safety at ISP, Defendants took no meaningful steps in the almost year that followed prior to Mr. Smith's death, to improve fire safety at ISP.

56.     Mr. Smith's death was the direct and tragically foreseeable result of Defendants' complete and utter failure to make any meaningful improvements to fire safety at ISP, despite

being repeatedly placed on notice of the need to do so, and the tragic consequences for failing to do so.

## PLAINTIFF'S DAMAGES

57.    As a result of Defendants' misconduct, Mr. Smith died locked in his cell where a fire raged.

58.    After an examination by the medical examiner, Mr. Smith's cause of death was determined to be thermal burns.

59.    As a result of Defendants' misconduct, Mr. Smith suffered horrific and excruciating injuries which ultimately caused his death. His family has also suffered extreme injury and loss because of Mr. Smith's death.

60.    Plaintiff, on her own behalf and on behalf of the Estate of Mr. Smith, seeks to recover for the severe harm caused by Defendants, including but not limited to damages for the loss of Mr. Smith's life; the severe physical and emotional pain and suffering, mental anguish, loss of liberty, humiliation, degradation, and anxiety that Mr. Smith suffered while he was locked in his cell with the fire raging; the loss of society and companionship that his family has suffered; funeral and burial expenses; and the costs and expenses of administering Mr. Smith's Estate, including attorney's fees.

## COUNT I
### 42 U.S.C. § 1983 – Failure to Protect
### All Defendants

61.    Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

62.    In the manner more fully described above, Defendants, in derogation of their constitutional duty, acted with deliberate indifference to Mr. Smith's health and safety.

63.    Mr. Smith was subjected to a strong likelihood of serious harm when he remained locked in his cell after a fire broke out and flames engulfed his cell.

64.    Defendants, including Defendant Officers, were present at the time of the fire and knew the danger Mr. Smith faced if he was left in his cell while the fire raged.

65.    Despite knowing the risk of harm to Mr. Smith, Defendants, including Defendant Officers, failed to take any steps to put out the fire or remove Plaintiff from his cell. This failure was intentional, malicious, and/or a result of deliberate indifference to Mr. Smith's rights.

66.    Defendants Neal, Nowatzke, Beal, Brown, Taylor, Wardlow, Kaufman, Kmitta, and Whitaker knew about the dangerous conditions at ISP and in A Cell House described in greater detail above, were aware of the serious risk of harm these conditions posed to prisoners in the event of a fire, and had both the ability and responsibility to take action in response to that knowledge. Despite their knowledge, these Defendants failed to take any steps to remedy any of these dangerous conditions. These failures were intentional, malicious, and/or a result of deliberate indifference to Mr. Smith's rights.

67.    The dangerous conditions that were allowed to persist at ISP and in A Cell House as a result of these Defendants' misconduct thwarted efforts that otherwise could have been taken to save Mr. Smith's life and/or caused the fire to spread more rapidly than it otherwise would have.

68.    Defendants Neal, Nowatzke, Beal, Brown, Taylor, and Wardlow knew of the serious risk that an emergency, such as a fire, posed to prisoners who were unable to move freely or control the conditions of their confinement, and further knew that because prisoners are typically unable to move freely about ISP, emergency-response policies, procedures and training were necessary to ensure prisoner safety.

14

69.     Despite this knowledge, Defendants Neal, Nowatzke, Beal, Brown, Taylor, and Wardlow did not have adequate emergency-response policies and procedures in place and failed to train and instruct staff to adequately and timely respond to a fire or other emergency. These failures were intentional, malicious, and/or a result of deliberate indifference to Mr. Smith's rights.

70.     Mr. Smith suffered physically and emotionally, and ultimately died as a result of the fire in his cell, which would not have happened but for Defendants' misconduct as alleged in this Count.

### COUNT II
### 42 U.S.C. § 1983 – Failure to Intervene
### All Defendants

71.     Plaintiff incorporates each paragraph of this complaint as if fully restated here.

72.     In the manner more fully described above, each of the Defendants, including Defendant Officers, had a reasonable opportunity to prevent the violation of Mr. Smith's constitutional rights as set forth above, but failed to do so.

73.     The misconduct described in this Count was intentional, malicious, and/or a result of reckless indifference to Mr. Smith's rights.

74.     As a direct and proximate result of the failure to intervene referenced above, Mr. Smith's rights were violated, and he suffered injuries including pain, suffering, emotional distress, and ultimately death.

### COUNT III
### Negligent or Willful and Wanton Conduct
### All Defendants

75.     Plaintiff incorporates each paragraph of this complaint as if fully restated here.

76.     In the manner described more fully above, Defendants' conduct breached the duty of care owed to Mr. Smith, who was in their custody and care.

77.    Defendants, including Defendant Officers, breached their duty of care by failing to take reasonable steps to release Mr. Smith from his cell after the fire began, to put out the fire, and/or to otherwise protect him from the danger posed by the fire.

78.    Defendants Neal, Nowatzke, Beal, Brown, Taylor, Wardlow, Kaufman, Kmitta, and Whitaker further breached their duty of care by failing to have policies, protocols, training and safety mechanisms in place to protect Mr. Smith and the other prisoners in the case of an emergency, such as the fire that occurred on January 14, 2023, and by failing to address known fire risks at the prison.

79.    Alternatively, the actions of Defendants were willful and wanton in that they demonstrated an utter indifference to the safety of Mr. Smith and the other prisoners. Defendants were aware that an injury would probably result from their actions or failures to act and recklessly disregarded the consequences of those actions or failures to act.

80.    As a direct and proximate result of Defendants' negligence and/or willful and wanton conduct, Mr. Smith endured conscious physical and emotional pain and suffering prior to his death.

## COUNT IV
### Intentional Infliction of Emotional Distress
### All Defendants

81.    Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

82.    In the manner described more fully above, by failing to take any steps to aid Mr. Smith after they learned he was locked in his burning cell, by failing to take any steps to put out the fire, and by thwarting the efforts of others to put out the fire, Defendants, including Defendant Officers, engaged in extreme and outrageous conduct.

83.     In the manner more fully described above, Defendants, including Defendant Officers, engaged in extreme and outrageous conduct by failing to remedy the dangerous conditions and deficient fire safety and emergency response training, policies and practices at ISP, despite knowing that these dangerous conditions and deficiencies posed a serious risk to the health, safety, and life of Mr. Smith and other prisoners at ISP.

84.     Defendants' actions as set forth above were rooted in an abuse of power or authority.

85.     Defendants' conduct as set forth above was undertaken with intent to cause, or with reckless disregard of the high probability that the conduct would cause, severe emotional distress to Mr. Smith.

86.     As a direct and proximate result of Defendants' misconduct, Mr. Smith endured severe emotional distress prior to his death.

## COUNT V
## Wrongful Death
## All Defendants

87.     Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

88.     In the manner described more fully above, Defendants' conduct breached the duty of care owed to Mr. Smith, who was in their custody and care.

89.     Defendants, including Defendant Officers, breached their duty of care by failing to take reasonable steps to release Mr. Smith from his cell after the fire began, to put out the fire, and/or to otherwise reasonably protect him from the danger posed by the fire.

90.     Defendants Neal, Nowatzke, Beal, Brown, Taylor, Wardlow, Kaufman, Kmitta, and Whitaker further breached their duty of care by failing to have policies, protocols, training, and safety mechanisms in place to protect Mr. Smith and the other prisoners in the case of an

17

emergency, such as the fire that occurred on January 14, 2023, and by failing to address known fire risks at the prison.

91.    Alternatively, the actions of Defendants were willful and wanton in that they demonstrated an utter indifference to the safety of Mr. Smith and the other prisoners. Defendants were aware that an injury would probably result from their actions or failures to act and recklessly disregarded the consequences of those actions or failures to act.

92.    As a direct and proximate result of Defendants' negligence and/or willful and wanton conduct, Mr. Smith suffered physical pain and injuries, resulting emotional injuries, and ultimately death.

WHEREFORE, Plaintiff, on her own behalf and on behalf of the Estate of Michael Smith, respectfully requests that this Court enter judgement in her favor and against Defendants, awarding compensatory damages, punitive damages, attorney's fees and costs, and any other relief this Court deems just and appropriate.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury pursuant to Rule 38(b) of the Federal Rules of Civil Procedure on all issues so triable.

Respectfully submitted,

**MYSTI VALENCIA,**
**as Personal Representative of the Estate of**
**Michael Smith and on her own behalf.**

By:  /s/ Maria Makar
     One of her Attorneys

Arthur Loevy
Jon Loevy
Locke E. Bowman
Megan Pierce
Maria Makar

18

LOEVY & LOEVY
311 North Aberdeen St., 3rd Floor
Chicago, IL 60607
T: (312) 243-5900
F: (312) 243-5902
makar@loevy.com

## <u>CERTIFICATE OF SERVICE</u>

I, Maria Makar, hereby certify that on August 26, 2024, I filed the foregoing document using the Court's CM/ECF system, which effected service on all counsel of record.

/s/ Maria Makar
One of Plaintiff's Attorneys
